**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| **MEDIA CHAIN, LLC,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 1:21-cv-00027 |
| **v.** | ) | |
| | ) | JURY TRIAL DEMANDED |
| **ROKU, INC.,** | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |

**DEFENDANT'S MOTION TO TRANSFER VENUE**
**<u>UNDER 28 U.S.C. § 1404(a)</u>**

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ................................................................................................ 1
II.     BACKGROUND ................................................................................................. 2
III.    LEGAL STANDARD.......................................................................................... 5
IV.     THE NORTHERN DISTRICT OF CALIFORNIA IS CLEARLY THE MORE
        CONVENIENT VENUE ..................................................................................... 6

        A.    This case could have—and should have—been filed in NDCA. ........................... 6
        B.    The private interest factors overwhelmingly favor transfer. .................................. 7

              1.    Relative ease of access to sources of proof weighs in favor of
                    transfer. ....................................................................................................... 7
              2.    Availability of compulsory process strongly favors transfer. ..................... 8
              3.    Costs for willing witnesses weighs in favor of transfer............................. 9
              4.    The practical problems factor is neutral or slightly favors transfer. ......... 11

        C.    The public interest factors favor transfer. .............................................................. 12

              1.    Local interest strongly favors transfer. ..................................................... 12
              2.    Familiarity with governing law and conflicts of law. ............................... 13
              3.    Administrative difficulties. ....................................................................... 14

V.      CONCLUSION.................................................................................................... 15

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*In re Adobe Inc.*,
   823 F. App'x 929 (Fed. Cir. 2020) ................................................................14, 15

*In re Apple Inc.*,
   818 F. App'x 1001 (Fed. Cir. 2020) .........................................................................6

*In re Apple Inc.*,
   979 F.3d 1332 (Fed. Cir. 2020).................................................................. *passim*

*DataQuill, Ltd. v. Apple Inc.*,
   No. A-13-CA-706-SS, 2014 WL 2722201 (W.D. Tex. June 13, 2014) ...........13, 14

*Dos Santos v. Air China Ltd.*,
   No. A-19-CV-00383-LY, 2019 WL 3941290 (W.D. Tex. Aug. 21, 2019),
   *report and recommendation adopted*, No. 1:19-CV-383-LY, 2020 WL
   7631928 (W.D. Tex. Jan. 9, 2020).........................................................................11

*Flick v. Wyeth LLC*,
   No. 6:10CV658, 2012 WL 13008725 (E.D. Tex. Jan. 19, 2012) ...........................12

*Gemalto S.A. v. CPI Card Grp. Inc.*,
   No. CV A-15-CA- 0910-LY, 2015 WL 10818740 (W.D. Tex. Dec. 16, 2015)......8

*In re Genentech, Inc.*,
   566 F.3d 1338 (Fed. Cir. 2009).............................................................7, 8, 9, 14

*Healthpoint, Ltd. v. Derma Scis., Inc.*,
   939 F. Supp. 2d 680 (W.D. Tex. 2013)..................................................................14

*Jones v. Angelo State Univ.*,
   No. A-09-CA-652-SS, 2009 WL 10699928 (W.D. Tex. Oct. 19, 2009)................11

*Kroy IP Holdings, LLC v. Safeway, Inc.*,
   107 F. Supp. 3d 677 (E.D. Tex. 2015), *aff'd*, 639 F. App'x 637 (Fed. Cir.
   2016) .........................................................................................................................2

*Mimedx Grp., Inc. v. Texas Hum. Biologics, Ltd.*,
   No. 1:14-CV-464-LY, 2014 WL 12479284 (W.D. Tex. Aug. 12, 2014)...............13

*Moskowitz Fam. LLC. v. Globus Med., Inc.*,
   No. 6:19-CV-00672-ADA, 2020 WL 4577710 (W.D. Tex. July 2, 2020)..............14

*In re Nintendo Co., Ltd.*,
  544 F. App'x 934 (Fed. Cir. 2013) ....................................................................5

*In re Nintendo Co. Ltd.*,
  589 F.3d 1194 (Fed. Cir. 2009)....................................................................6, 7

*In re Nitro Fluids L.L.C.*,
  978 F.3d 1308 (Fed. Cir. 2020)........................................................................14

*Parus Holdings Inc. v. LG Elecs. Inc.*,
  No. 6:19-cv-00432, 2020 WL 4905809 (W.D. Tex. Aug. 20, 2020) ........................6, 7, 8, 11

*Promote Innovation LLC v. Schering Corp.*,
  No. 2:10-CV-248-TJW, 2011 WL 665817 (E.D. Tex. Feb. 14, 2011)....................................13

*In re Radmax, Ltd.*,
  720 F.3d 285 (5th Cir. 2013) .........................................................................11

*Sewing v. Stryker Corp.*,
  No. H-10-4818, 2012 WL 3599459 (S.D. Tex. Aug. 14, 2012) ................................................11

*Solas OLED Ltd. v. Apple Inc.*,
  No. 6:19-cv-00537, 2020 WL 3440956 (W.D. Tex. June 23, 2020) ..............................................6

*Spent v. Geolfos*,
  No. SA-11-CA-306-XR, 2011 WL 13238556 (W.D. Tex. July 19, 2011)..............................8

*In re TS Tech USA Corp.*,
  551 F.3d 1315 (Fed. Cir. 2008).................................................................10, 14

*In re Verizon Bus. Network Servs. Inc.*,
  635 F.3d 559 (Fed. Cir. 2011) ..........................................................................6

*Via Vadis, LLC v. Netgear, Inc.*,
  No. A-14-CV-809-LY, 2015 WL 10818675 (W.D. Tex. July 30, 2015) ...............................13

*In re Volkswagen AG*,
  371 F.3d 201 (5th Cir. 2004) ......................................................................5, 10

*In re Volkswagen of Am., Inc.*,
  545 F.3d 304 (5th Cir. 2008) ....................................................................... *passim*

*Weatherford Tech. Holdings, LLC v. Tesco Corp.*,
  No. 2:17-cv-00456, 2018 WL 4620636 (E.D. Tex. May 22, 2018) ..........................................6

*Wet Sounds, Inc. v. Audio Formz, LLC,*
　　No. A-17-CV-141- LY, 2017 WL 4547916 (W.D. Tex. Oct. 11, 2017), *rep. &*
　　*rec. adopted*, No. 1:17-CV-141- LY, 2018 WL 1219248 (W.D. Tex. Jan. 22,
　　2018) ...............................................................................................................7

*Wireless Recognition Techs. LLC v. A9.com, Inc.,*
　　Nos. 2:10-cv-364, 2012 WL 506669 (E.D. Tex. Feb. 15, 2012) ............................12

**Statutes**

28 U.S.C. § 1404(a) ............................................................................ *passim*

**Other Authorities**

Fed. R. Civ. P. 45(c)(1)(A) .........................................................................8

Fed. R. Civ. P. 45(c)(1)(B) .........................................................................8

## I.       INTRODUCTION

Defendant Roku, Inc. ("Roku") respectfully moves under 28 U.S.C. § 1404(a) to transfer this patent action out of the Western District of Texas ("WDTX") to the Northern District of California ("NDCA").

Last fall, the Federal Circuit clarified the standards for a motion to transfer for convenience. *In re Apple Inc.*, 979 F.3d 1332 (Fed. Cir. 2020).  The merits of that decision are especially pertinent here because, as in *Apple*, the Plaintiff's primary argument is that Austin is the clearly more convenient venue because Roku has a significant Austin presence.  The Federal Circuit clarified that argument alone, without some relationship to the lawsuit, is insufficient to defeat transfer.  Indeed, even though defendant Apple had a "campus of more than 8,000 employees in the Western District of Texas[,]" had "multiple retail stores in the district and [was] building its own hotel[,]" the Federal Circuit found that, even under the heightened standards of a writ of mandamus, NDCA was clearly the more convenient forum.  *Id*. at 1339–46, 1351.

The evidence here provides a more compelling case than *Apple* that NDCA is clearly the more convenient and appropriate venue for this dispute for two reasons.  First, the vast majority of Roku's personnel, facilities, and infrastructure involved in the sales, marketing, distribution, engineering, and design and development of the technical aspects of the accused Roku products reside in NDCA—the home of Roku's headquarters and its principal place of business.  Roku is not aware of a single likely fact witness who works in the Austin office or elsewhere in the Western District of Texas.

Second, Roku's presence in WDTX stands in stark contrast to Apple's "large" and "increasing presence."  *Id*. at 1345-46.  To be sure, Roku has a much smaller office in Austin than does Apple, and Roku is not aware of anything relevant to this case that happened there or that involves anyone who works there.  Forcing witnesses to travel to Austin from California would

cause unnecessary hardship.  More importantly, because the Court cannot compel California-based third-party witnesses to testify at a trial in Austin, proceeding in this district would deprive the jury of seeing and hearing from third-party witnesses, such as employees of third-party companies such as Netflix, YouTube, Google Play, and Apple, who partner and collaborate with Roku to deliver the services that are accused in this case.  Nor does Plaintiff's sole, bare-bones allegation that "Roku committed at least one of the acts of infringement alleged herein in Texas, and this judicial district" (Complaint ("Compl.") (Dkt. No. 1), ¶ 12) make Austin the more convenient venue.  Roku does not sell any product or service in Austin that is not equally available throughout the rest of the country.  Because NDCA is the clearly more-convenient forum for this litigation, and there is no material connection to WDTX, transfer should be granted.

## II.     BACKGROUND

Despite suing in WDTX, Plaintiff Media Chain ("Media Chain") has no relevant ties to the state of Texas.  Media Chain is a Delaware company with its principal place of business in Florida.  Compl., ¶ 5.  There is no evidence that Media Chain owns any land in Texas, makes any products in Texas, or employs anyone in Texas.  Moreover, the inventor of the asserted patents appears to be based in Florida, not Texas.  *See* Declaration of Michael Tomasulo ("Tomasulo Decl."), Ex. 1 (background report on Christopher Estes).

The asserted patents generally relate to a business method[1] of collecting, analyzing, and organizing user data for monetizing the reproduction of digital media content.  Specifically, the

---

[1] Media Chain's claims are patent ineligible because they purport to patent a business method that has been a part of advertising for decades.  Roku will present this issue in future dispositive briefing.  *See, e.g.*, *Kroy IP Holdings, LLC v. Safeway, Inc.*, 107 F. Supp. 3d 677, 690 (E.D. Tex. 2015), *aff'd*, 639 F. App'x 637 (Fed. Cir. 2016) ("In each of the district court cases dealing with computerized business methods in the field of marketing, the courts have held the claims patent-ineligible after finding that the claimed computerized activities involved actions that had previously been performed, albeit less efficiently, without the aid of computers.")

patents are directed to collecting data specific to users as they accept or decline to purchase a license to view media content, organizing that data, and sharing that user data with third parties for marketing purposes.  Compl., ¶ 2.

The complaint alleges that certain Roku products and services infringe the asserted claims.  *See id.*, ¶ 15.  To the extent they can be understood, the infringement allegations appear to be directed to or at least identify the following features and services: content viewing and license management, user data collection and organization, data for third-party partners, and media fingerprint.  *See, e.g.*, Compl. Ex. C at 4, 6, 52.  These functionalities allegedly fit largely under the categories of digital rights management, Roku Pay, content recommendation, and ad-technology (hereinafter, "Accused Services").

Importantly, the infringement allegations, though vague and incomprehensible, suggest that employees of Roku "channel partners" may be relevant witnesses because certain claims of the asserted patents include limitations that seem to explicitly require third-party performance.  For example, limitations 1g and 1h of claim 1 of the '191 patent recite "analyzing ***by the third party***, the statistic record, to determine the target demographic…" and "marketing, ***by the third party***, the media content item to a plurality of other users." *Id.*, 47–49 (emphasis added).  Media Chain seems to allege that the "third parties" that supposedly do the required "analyzing" and "marketing" are Roku "channel partners" like Netflix, YouTube, Google Play and Apple.  (Compl. Ex. C at 35–36).  For example, Media Chain seems to allege that channel partners must perform the required "analyzing" and "marketing" steps because Roku allegedly provides these partners with the data to do so, such as "basic analytics … on channel health, viewership and engagement" and an "Audience Insights report" which can be "used as an ad sales enablement tool."  *Id.*, at 48, 50.

Many well-known channel partners, such as Netflix, YouTube, Google Play and Apple, are headquartered in the NDCA.  Tomasulo Decl., Exs. 2–5.  Tubi TV, Pluto TV, Philo, and Vudu are located there as well.  *Id*., Exs. 6–9.  Others channel partners are in California closer to the NDCA than to the WDTX (Hulu in Los Angeles and Starz, Disney, and the CW elsewhere in California).  *Id*., Exs. 9–13.

Like many of its channel partners, Roku is headquartered in San Jose, California.  Declaration of Venkatesh Tumatikrishnan ("Roku Corp. Decl.") ¶ 5.  Nearly every relevant aspect of Roku's business takes place at this location.  For example, Roku's engineering teams focusing on the Accused Services are based primarily out of the San Jose office.  *Id*., ¶ 7.  None reside in the Western District of Texas.  *Id*.  Roku's marketing personnel are located primarily in the San Jose office, and marketing and financial documents not stored electronically are almost exclusively stored at the San Jose office.  *Id*., ¶¶ 6, 8.  Roku's sales and distribution personnel are headquartered in San Jose.  *Id*., ¶ 8.

Of critical importance to this case, only ***three*** of Roku's approximately 650 Sales and Marketing Organization employees are based out of Roku's Austin office, and none of these three representatives have specialized, unique, or deep technical knowledge of the Accused Services.  *Id*., ¶¶ 8-9.  These three employees work within the areas of result analysis of advertising campaigns, licensing, and communications. *Id*., ¶ 9.  Likewise, only four of Roku's approximately 24 Ad Performance team members are based out of Roku's Austin office, and none of these four employees have specialized, unique, or deep technical knowledge of the Accused Services.  *Id*., ¶ 10.  Indeed, Roku is not aware of ***any*** engineer in its Austin office or elsewhere in the Western District of Texas who focuses on or has specialized knowledge of the Accused Services.  *Id*., ¶ 4.  The primary function at Roku's Austin office is new product introduction.  *Id*., ¶ 12.  While

televisions having some of the accused functionalities are tested in the Austin office, the engineers responsible for designing and implementing the Accused Services are based primary in NDCA. *Id*., ¶¶ 4, 7.

### III.   LEGAL STANDARD

Whether to transfer venue is a preliminary issue that must be addressed at the outset of a federal action, and "disposing of that motion should unquestionably take top priority." *Apple*, 979 F.3d at 1337. The Court may transfer an action to any district or division where it might have been brought if that transfer serves "the convenience of parties and witnesses" and "the interest of justice." 28 U.S.C. § 1404(a). In evaluating convenience, the Fifth Circuit weighs a series of private and public interest factors. *Apple*, 979 F.3d at 1338; *see also In re Nintendo Co. Ltd.*, 544 F. App'x 934, 941 (Fed. Cir. 2013) ("A trial court must first address whether it is a proper and convenient venue before addressing any substantive portion of the case.").

"The private interest factors are: '(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive.'" *Apple*, 979 F.3d at 1338 (quoting *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) ("*Volkswagen I*")). "And [t]he public interest factors are: '(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws [or in] the application of foreign law.'" *Apple*, 979 F.3d at 1338.

If the proposed transferee forum is "clearly more convenient," then there is "good cause and the district court should therefore grant the transfer." *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 315 (5th Cir. 2008) (en banc) ("*Volkswagen II*"). The "plaintiff's choice of venue is not an

independent factor in the venue transfer analysis"; rather, the good-cause requirement reflects the appropriate deference to that choice. *Parus Holdings Inc. v. LG Elecs. Inc.*, No. 6:19-cv-00432, 2020 WL 4905809, at *2 (W.D. Tex. Aug. 20, 2020); *see also Volkswagen II*, 545 F.3d at 314–15. In assessing a venue transfer motion, the Court does not presume the truth of the non-moving party's allegations, but instead considers any venue-related evidence and resolves whether it favors or disfavors transfer.[2]  *See In re Verizon Bus. Network Servs. Inc.*, 635 F.3d 559, 561 (Fed. Cir. 2011) ("A motion to transfer under § 1404(a) calls upon the trial court to weigh a number of case-specific factors based on the individualized facts on record.").

## IV.   THE NORTHERN DISTRICT OF CALIFORNIA IS CLEARLY THE MORE CONVENIENT VENUE

NDCA is clearly the more convenient forum for this case for party and third-party witnesses.  Where, as here, "most witnesses and evidence [are] closer to the transferee venue with few or no convenience factors favoring the venue chosen by the plaintiff, the trial court should grant a motion to transfer." *In re Nintendo Co. Ltd.*, 589 F.3d 1194, 1198 (Fed. Cir. 2009).

### A.   This case could have—and should have—been filed in NDCA.

As an initial matter, there is no question that this case could have been brought in NDCA, as it is undisputed that Roku is headquartered in that district. *See* Compl., ¶ 6.  Moreover, the Accused Services are developed primarily in NDCA.  Roku Corp. Decl., ¶¶ 4, 7.  Thus, no jurisdictional obstacle prevented Media Chain from filing suit in NDCA.

---

[2] Although this Court previously relied on *Weatherford Tech. Holdings, LLC v. Tesco Corp.*, No. 2:17-cv-00456, 2018 WL 4620636, at *2 (E.D. Tex. May 22, 2018) for the proposition that the court "must draw all reasonable inferences and resolve all factual conflicts in favor of the non-moving party," (*see Solas OLED Ltd. v. Apple Inc.*, No. 6:19-cv-00537, 2020 WL 3440956, at *2 (W.D. Tex. June 23, 2020)), that reliance has been appropriately "question[ed]," especially given "the elevated 'clearly more convenient' standard that the movant must meet." *In re Apple Inc.*, 818 F. App'x 1001, 1003 (Fed. Cir. 2020).

**B.** **The private interest factors overwhelmingly favor transfer.**

**1.** **Relative ease of access to sources of proof weighs in favor of transfer.**

As this Court has recognized, "the location of relevant documents and information"—even electronically stored documents[3]—remains a relevant factor under Fifth Circuit precedent. *See Parus*, 2020 WL 4905809, at *3 (citing *Volkswagen II*, 545 F.3d at 316). Courts analyze this factor in light of the distance that documents or other evidence must be transported from their existing location to the trial venue. *Volkswagen II*, 545 F.3d at 316. This generally turns on which party is most likely to have the greater volume of documents relevant to the case. *See Nintendo*, 589 F.3d at 1198. As in most patent cases—especially those brought by a non-practicing entity like Media Chain—Roku, as the accused infringer, possesses most of the relevant documents. *See In re Genentech, Inc.*, 566 F.3d 1338, 1345 (Fed. Cir. 2009) ("In patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer. Consequently, the place where the defendant's documents are kept weighs in favor of transfer to that location.").

This factor weighs in favor of transfer. Roku's documents are likely to be the main sources of proof in this case, used by both Media Chain to try to prove its claims and Roku to defend. Critically, the engineering documents concerning Roku's development, design, and implementation of the technology at issue in this case were generated and are stored in NDCA. Roku Corp. Decl., ¶ 6. So are Roku's financial documents, which will be relevant to Media Chain's claims for damages. *Id*. These documents are ***not*** stored in Roku's Austin office or elsewhere in the Western District of Texas. *Id*.

---

[3] That documents may be stored electronically does not undermine the import of their location. "[T]he Fifth Circuit [has] clarified that despite technological advances that make the physical location of documents less significant, the location of sources of proof remains a 'meaningful factor in the analysis.'" *Wet Sounds, Inc. v. Audio Formz, LLC*, No. A-17-CV-141- LY, 2017 WL 4547916, at *2 (W.D. Tex. Oct. 11, 2017), *rep. & rec. adopted*, No. 1:17-CV-141- LY, 2018 WL 1219248 (W.D. Tex. Jan. 22, 2018) (quoting *Volkswagen II*, 545 F.3d at 316).

Accordingly, and as with *Apple*, this factor weighs in favor of transfer. *See Apple*, 979 F.3d at 1341 (holding transfer was appropriate when employee declaration "stated that Apple stores a significant amount of relevant information in NDCA, including . . . Apple records relating to the research and design of the accused products, and marketing, sales, and financial information for the accused products" and the employee "was unaware of any relevant documents in WDTX"); *see also Genentech*, 566 F.3d at 1345; *Spent v. Geolfos*, No. SA-11-CA-306-XR, 2011 WL 13238556, at *4 (W.D. Tex. July 19, 2011) ("[I]f any other sources are sought in discovery, they will likely be found in Colorado, as Defendant resides and manufactures his belt buckles there.").

### 2. Availability of compulsory process strongly favors transfer.

"In this factor, the Court considers the availability of compulsory process to secure the attendance of witnesses, particularly non-party witnesses whose attendance may need to be secured by a court order." *Parus*, 2020 WL 4905809, at *4. This factor weighs most heavily in favor of transfer when third-party witnesses reside within a transferee venue that has "absolute subpoena power." *Volkswagen II*, 545 F.3d at 316. A court may subpoena a witness to attend trial only (a) "within 100 miles of where the person resides, is employed, or regularly transacts business in person"; or (b) "within the state where the person resides, is employed, or regularly transacts business in person." Fed. R. Civ. P. 45(c)(1)(A), (B).

This important factor favors transfer. Roku is unaware of any likely witnesses located in Texas (this includes Media Chain, which resides in Florida). In contrast, several third parties that are likely third-party witnesses reside within the subpoena power of NDCA. *See Volkswagen II*, 545 F.3d at 316–17 (when "a proper venue that does enjoy ***absolute*** subpoena power . . . is available," that fact favors transfer) (emphasis in original); *Gemalto S.A. v. CPI Card Grp. Inc.*, No. CV A-15-CA- 0910-LY, 2015 WL 10818740, at *4 (W.D. Tex. Dec. 16, 2015). As explained above, the infringement allegations, while vague, seem to indicate that Media Chain alleges that

certain method limitations are performed by Roku channel partners.  The infringement allegations identify by name two channel partners located in the NDCA (Netflix and Google Play), one in Los Angeles, California (Hulu), and none in Texas.  *See* Compl. Ex. C.  Many other Roku channel partners reside in NDCA (YouTube, Apple, Tubi TV, Pluto TV, Philo, Vudu) or elsewhere in California (Starz, Disney, the CW).  *See* Tomasulo Decl., Exs. 3, 5, 7–13.

The infringement allegations, though vague, repeatedly mention these channel partners (e.g., Netflix and Google Play) in a manner that suggests people at these channel partners may be called as trial witnesses.  For instance, the complaint repeatedly cites advertisements mentioning Netflix and Google Play as evidence of infringement.  *See* Compl., Ex. C at 2, 14, 24, 35-36, 52, 68.  Roku works closely with these and other channel partners to help monetize the reproduction of digital media content.  Roku Corp. Decl., ¶ 13.  Most of Roku's streaming hours are derived from third-party channels based in NDCA.  *Id*., ¶ 14.  Several of these channel partners are headquartered in Los Gatos, California in NDCA.  Exs. 2–9.  The engineers and marketing personnel at those companies that work most closely with Roku generally work in NDCA.  Roku Corp. Decl., ¶ 13.

Not only would NDCA be much more convenient for these witnesses, as well as the other witnesses from the third-party channels based in California—if necessary, either party could subpoena them to appear at trial there.  It could not do so in this Court.  Unlike in *Apple*, 979 F.3d at 1341, where this factor was neutral, this factor strongly favors transfer.

### 3. Costs for willing witnesses weighs in favor of transfer.

The convenience of witnesses is "an important factor."  *Genentech*, 566 F.3d at 1343.  The Federal Circuit has applied the Fifth Circuit's "100-mile" rule in analyzing witness travel in a patent case.  *In re TS Tech USA Corp.*, 551 F.3d 1315, 1320 (Fed. Cir. 2008).  "When the distance between an existing venue for trial of a matter and a proposed venue under § 1404(a) is more than

100 miles, the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled." *Id*.; *see also Volkswagen I*, 371 F.3d at 204–05 ("Additional distance means additional travel time; additional travel time increases the probability for meal and lodging expenses; and additional travel time with overnight stays increases the time which [ ] fact witnesses must be away from their regular employment").

This factor weighs in favor of transfer. All the likely witnesses with knowledge of the Accused Services are in NDCA. Roku Corp. Decl., ¶ 4. All likely Roku employee witnesses on these teams reside and work in NDCA. *See id*. Roku is not presently aware of any likely fact witnesses who reside or work in WDTX. *Id.* Roku's streaming-related work takes place in its San Jose office; none of it takes place, or ever has taken place, in Austin or elsewhere in the Western District of Texas. *Id*., ¶¶ 4, 7, 12. Roku does have three Sales and Marketing Organization employees in Austin, but none are likely witnesses and none have unique or specialized knowledge of the Accused Services. *See id*., ¶ 9. The same is true with respect to Roku's four Ad Performance team members based out of the Austin office. *Id*., ¶ 10. And while televisions having some of the accused functionalities are tested in Roku's Austin office, the likely witnesses are the engineers responsible for designing and implementing the accused functions, who are based primarily in NDCA. *Id*., ¶¶ 4, 7. This Court must therefore consider the burden these witnesses will have to bear, because the burden of testifying at trial is borne by individuals, not just by the companies that employ them.

Separately, although Florida-based Media Chain and the Florida-based inventor "will need to travel a greater distance to reach NDCA than WDTX, and although a flight from [Florida] to WDTX might take a bit less time than from [Florida] to NDCA, in either instance [they] will likely have to leave home for an extended period of time and incur travel, lodging, and related costs."

*Apple*, 979 F.3d at 1342.  In other words, the additional burden associated with the longer distance between Florida and Austin compared to traveling from Florida to California is de minimis, and therefore does not tip this factor against transfer.  For the reasons discussed, and for the reasons set forth in *Apple*, this factor weighs in favor of transfer.  *See id*.

### 4.      Other practical problems slightly favor transfer.

"The Fifth Circuit has clarified that 'garden-variety delay associated with transfer is not to be taken into consideration when ruling on a § 1404(a) motion to transfer.'"  *Dos Santos v. Air China Ltd.*, No. A-19-CV-00383-LY, 2019 WL 3941290, at *3 (W.D. Tex. Aug. 21, 2019), *report and recommendation adopted*, No. 1:19-CV-383-LY, 2020 WL 7631928 (W.D. Tex. Jan. 9, 2020) (quoting *In re Radmax, Ltd.*, 720 F.3d 285, 289 (5th Cir. 2013)).

Judicial economy weighs in favor of transfer to NDCA because this case is in its early stages.  *See Parus*, 2020 WL 4905809, at *6–7 ("[T]his case is in its early stages, meaning any increase in judicial economy from the Court's experience in these early stages of litigation is likely to be limited.").  Media Chain has only filed its Complaint.  Apart from the present motion to transfer, there has been no substantive motion practice.  "Nor has this Court obtained any substantial familiarity with the case that would support judicial economy in retaining and trying this suit."  *Sewing v. Stryker Corp.*, No. H-10-4818, 2012 WL 3599459, at *3 (S.D. Tex. Aug. 14, 2012).

And significantly, "the fact that [NDCA] is the forum where [Roku] is headquartered and where the facts of this case took place makes it much more likely a transfer would eventually minimize the inconvenience to all involved.  Thus, this factor weighs in favor of transfer."  *Jones v. Angelo State Univ.*, No. A-09-CA-652-SS, 2009 WL 10699928, at *6 (W.D. Tex. Oct. 19, 2009); *see also Flick v. Wyeth LLC*, No. 6:10CV658, 2012 WL 13008725, at *3 (E.D. Tex. Jan. 19, 2012)

("There is no indication that a venue transfer to the Western District of Virginia would cause the trial of this matter to be more difficult, slower and more expensive for the parties.").

### C.     The public interest factors favor transfer.

#### 1.     Local interest strongly favors transfer.

The local interest factor "most notably regards not merely the parties' significant connections to each forum writ large, but rather the 'significant connections between a particular venue and the events that gave rise to a suit.'" *Apple*, 979 F.3d at 1345 (quotation omitted). In *Apple*, for example, there was no dispute that Apple has a "substantial" presence in WDTX, including its existing Austin campus and plans "to build a second campus in Austin." *Id*. at 1344. Nevertheless, the Federal Circuit held that these "general contacts with the forum" are "untethered to the lawsuit" and thus entitled to little weight. *Id*. at 1345. Instead, what mattered was that "the accused products were designed, developed, and tested in NDCA," and that "the lawsuit 'calls into question the work and reputation of several individuals residing' in NDCA." *Id*. (quotation omitted). As a result, notwithstanding Apple's presence in WDTX, the Federal Circuit held that "this factor weighs in favor of transfer." *Id*.

The present case has a more compelling local interest in NDCA compared to *Apple*. NDCA is the location of Roku's headquarters and many of Roku's key channel partners, including Netflix, YouTube, Google, and Apple. Tomasulo Decl., Exs. 2–5. In addition, it is the site of the key events, including the design and operations of Roku's allegedly infringing products. Roku Corp. Decl., ¶¶ 4, 7; *see, e.g.*, *Wireless Recognition Techs. LLC v. A9.com, Inc.*, Nos. 2:10-cv-364, 2012 WL 506669, at *6 (E.D. Tex. Feb. 15, 2012) (finding this factor favors transfer when defendants are headquartered, develop products at issue, and employ many people in transferee venue).

This District has no plausible localized interest in this action. *See Volkswagen II*, 545 F.3d at 317–18. Media Chain itself is located in a different district—the Southern District of ***Florida***—

which does not give rise to a localized interest here. *See, e.g., Promote Innovation LLC v. Schering Corp.*, No. 2:10-CV-248-TJW, 2011 WL 665817, at *4 (E.D. Tex. Feb. 14, 2011); *Via Vadis, LLC v. Netgear, Inc.*, No. A-14-CV-809-LY, 2015 WL 10818675, at *3 (W.D. Tex. July 30, 2015) (Yeakel, J.) ("[W]here the plaintiff has virtually no connection to the chosen forum, a plaintiff's choice is entitled to little deference . . . [and] is not enough to outweigh the stated conveniences of litigating this case in California."). That Roku has an Austin campus does not change the analysis. The "mere presence" of a party's personnel or facilities in a venue, when those personnel or facilities have nothing to do with the case, does not create a local interest. *DataQuill, Ltd. v. Apple Inc.*, No. A-13-CA-706-SS, 2014 WL 2722201, at *4 (W.D. Tex. June 13, 2014). Relying on a party's mere presence in a district "improperly conflate[s]" the test for venue under Section 1400 with the transfer factors under Section 1404. *Apple*, 979 F.3d at 1346. None of the witnesses, evidence, claims, or defenses in this case has any connection to Roku's Austin campus. Roku Corp. Dec. ¶¶ 4, 7-10. As this Court has correctly found before, based on highly similar facts, "[t]here is no dispute [the defendant] has a presence in this district, but that presence is unrelated to this litigation. The egg is here, but the yolk is not. The NDCA is clearly the more convenient venue." *DataQuill, Ltd.*, 2014 WL 2722201, at *5. *See also Mimedx Grp., Inc. v. Texas Hum. Biologics, Ltd.*, No. 1:14-CV-464-LY, 2014 WL 12479284, at *3 (W.D. Tex. Aug. 12, 2014) (Yeakel, J.) ("Defendants and their employees are local to the San Antonio area. The ultimate outcome of this suit likely affects local San Antonio interests more acutely than local Austin interests.")

### 2. Familiarity with governing law and conflicts of law is at worst neutral.

Both NDCA and this Court are familiar with and will apply the relevant federal law. *See TS Tech USA*, 551 F.3d at 1320 (Fed. Cir. 2008) ("[P]atent claims are governed by federal law,

and as such both [courts are] capable of applying patent law to infringement claims.") (internal quotation marks omitted).  This factor is at worst neutral.

### 3.   Administrative difficulties slightly favor transfer.

The administrative difficulties factor looks to the relative docket congestion of the two venues, not merely the expected time to trial.  *In re Nitro Fluids L.L.C.*, 978 F.3d 1308, 1312 (Fed. Cir. 2020); *see also In re Adobe Inc.*, 823 F. App'x 929, 932 (Fed. Cir. 2020); *DataQuill, Ltd.*, 2014 WL 2722201, at *4.  It is "the most speculative" factor in the transfer analysis because statistics do "not always tell the whole story."  *Genentech,* 566 F.3d at 1347.

The median time to trial in NDCA is 2.39 years, while in WDTX it is 2.62 years.  *See* Tomasulo Decl., Ex. 14.  This factor slightly favors transfer.  *See Healthpoint, Ltd. v. Derma Scis., Inc.*, 939 F. Supp. 2d 680, 693 (W.D. Tex. 2013) ("Generally, this factor favors a district that can bring a case to trial faster.") (internal quotation marks omitted); *cf. Moskowitz Fam. LLC. v. Globus Med., Inc.*, No. 6:19-CV-00672-ADA, 2020 WL 4577710, at *5 (W.D. Tex. July 2, 2020) ("[T]he Austin Division has one of the highest caseloads per judge in the country.").  In any event, "[b]ecause this factor often calls for speculation, where 'several relevant factors weigh in favor of transfer and others are neutral, then the speed of the transferee district court should not alone outweigh all of those other factors.'"  *Apple*, 979 F.3d at 1344 n.5 (quoting *Genentech*, 566 F.3d at 1347).[4]

---

[4] Similarly, in *Adobe*, the Federal Circuit rejected the notion that "there is an appreciable difference in docket congestion" between WDTX and NDCA: "Nothing about the court's general ability to set a schedule directly speaks to that issue.  Nor does the record demonstrate an appreciable difference in docket congestion between the forums that could legitimately be worthy of consideration under this factor."  823 F. App'x at 932.

## V.      CONCLUSION

This case presents many of the same issues that the Federal Circuit faced in *Apple* when it granted a writ of mandamus directing the district court to transfer the action. But this case presents an even greater case for transfer. For the reasons set forth above, Roku respectfully requests that the Court transfer this case to NDCA.

DATED:  April 20, 2021                            Respectfully submitted,

                                                  */s/ Dustin J. Edwards*
                                                  Dustin J. Edwards (State Bar No. 24042335)
                                                  WINSTON & STRAWN LLP
                                                  800 Capitol Street, Suite 2400
                                                  Houston, TX 77002
                                                  Tel. (713) 651-2600
                                                  Fax (713) 651-2700
                                                  dedwards@winston.com

                                                  Michael A. Tomasulo (admitted *pro hac vice*)
                                                  David K. Lin (admitted *pro hac vice*)
                                                  Joe Netikosol (admitted *pro hac vice*)
                                                  WINSTON & STRAWN LLP
                                                  333 S. Grand Avenue
                                                  Los Angeles, CA 90071
                                                  Tel. (213) 615-1700
                                                  Fax (213) 615-1750
                                                  mtomasulo@winston
                                                  dlin@winston.com
                                                  jnetikosol@winston.com

                                                  Katherine Vidal (admitted *pro hac vice*)
                                                  WINSTON & STRAWN LLP
                                                  275 Middlefield Road
                                                  Menlo Park, CA 94025
                                                  Tel. (650) 858-6500
                                                  Fax (650) 858-6550
                                                  kvidal@winston.com

                                                  **COUNSEL FOR DEFENDANT**
                                                  **ROKU, INC.**

## <u>CERTIFICATE OF CONFERENCE</u>

Pursuant to Local Rule CV-7(i), I certify that counsel for Defendant conferred with counsel

for Plaintiff on April 7, 2021.  Counsel for Plaintiff stated that it does oppose Defendant's motion.

*/s/ Dustin J. Edwards*
Dustin J. Edwards

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on April 20, 2021, a true and correct copy of the

**DEFENDANT'S MOTION TO TRANSFER VENUE UNDER 28 U.S.C. § 1404(a)** to the

Austin Division was electronically filed with the Clerk of the Court using the CM/ECF system,

which sends notifications of such filing to all counsel of record who have consented to accept

service by electronic means.

*/s/ Dustin J. Edwards*
Dustin J. Edwards
